UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THERESA L. NYLANDER,

　　　　　　　Plaintiff,

　　　v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

　　　　　　　Defendant.

CASE NO. 11-cv-5502-JRC

ORDER ON PLAINTIFF'S
COMPLAINT

　　　This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (see also Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 6). This matter has been fully briefed (see ECF Nos.

16, 19, 20).

　　　After considering and reviewing the record, the undersigned finds that the ALJ

failed to evaluate properly the opinions of two treating physicians, while providing more

weight to the opinion of a non-examining doctor who may not have reviewed the entire medical record. The ALJ also erred in his review of plaintiff's credibility and in his review of the lay evidence. Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

<u>BACKGROUND</u>

Plaintiff, THERESA L. NYLANDER, was forty-one years old on her date of alleged onset of disability of June 1, 2001 (Tr. 154). Plaintiff has recent work experience from June, 1996 until 2005 (<u>see</u> Tr. 162-63, 172-73). She testified regarding her work for Washington State Parks and Recreation as a park aide (Tr. 41-42). In this position, she took care of registration, cleaned the bathrooms, mowed the lawns, dug posts and put in fences (<u>id.</u>). She alleged that she no longer was able to do this job due to her physical and mental impairments. According to the ALJ, plaintiff suffered from the severe impairments of gastroparesis; hypertension; hyperlipidemia; and, major depressive disorder, partially in remission (Tr. 14).

Plaintiff underwent a cholecystectomy "for what was described as a severely inflamed gallbladder with adhesions" on July 5, 2001, but continued to have nausea, as reported on July 18, 2001 and September 22, 2001 (<u>see, e.g.</u>, Tr. 248, 254, 255). On March 5, 2002, Dr. Carole Buckner, D.O. ("Dr. Buckner") indicated that because of plaintiff's "persistence of symptoms, she had a gastric emptying study on 11/21/01 that showed an abnormally low gastric emptying of 25% at 90 minutes" (Tr. 242). Dr. Buckner noted that plaintiff still had "significant daily nausea" and Dr. Buckner

conducted a physical examination (id.). Dr. Buckner opined that plaintiff suffered from idiopathic gastroparesis (id.). Because plaintiff's prescribed medications were not providing complete relief, Dr. Buckner indicated her plan to "do some research to see if anyone in this area is doing studies with gastric pacemaker or other experimental therapies for gastroparesis" (id.).

Dr. Buckner referred plaintiff to a specialist, gastroenterologist Dr. David Patterson, M.D. ("Dr. Patterson"), who saw plaintiff on June 17, 2002 due to plaintiff's continuing complaints of nausea (Tr. 377). Dr. Patterson conducted a physical examination and assessed that plaintiff had chronic nausea (Tr. 378). He opined that her previous gastric emptying study was invalid due to a deficient duration of testing and recommended a repeat of this study, as well as a repeat abdominal ultrasound, and other tests (Tr. 378-79). Dr. Patterson indicated his opinion that at that point in time, gastroparesis was "unproven" (Tr. 379).

On July 3, 2002, plaintiff's repeat gastric emptying study demonstrated 52% of gastric contents remained after 120 minutes, while normal "range is 50% emptied by 90 minutes +/- 30 minutes" (Tr. 382). Dr. Patterson again examined plaintiff on May 6, 2004 (Tr. 374-75). According to plaintiff's testimony, the gap in treatment visits was due to the fact that Dr. Patterson had advised plaintiff that no new treatments were available (Tr. 38-39). Dr. Patterson's treatment notes indicate that plaintiff "had been tried on all the available anti-emetic drugs that were available to the physician" (Tr. 374). He also indicated that "in the last two months, nausea has been more severe despite taking Domperidone" (id.). Dr. Patterson indicated his assessment that at this time plaintiff was

suffering from a flare up of gastroparesis (id.). He indicated his plan that plaintiff continue with the Domperidone and he added a prescription for Zelnorm (id.).

On February 10, 2004, Dr. Michael Schuffler, M.D ("Dr. Schuffler") examined plaintiff and indicated his assessment that she suffered from "idiopathic gastroparesis primarily expressing itself as moderately severe nausea" (Tr. 261). Dr. Schuffler indicated that plaintiff had "tried most drugs" and suggested that she try acupressure bands; getting Zofram from New Zealand; and acupuncture (id.). He indicated his emphasis that these treatment plans were "empiric and that it w[ould] be trial and error as we go" (id.).

Dr. Patterson examined plaintiff again on August 6, 2007 (Tr. 372-73). He indicated that plaintiff was suffering from nausea daily (Tr. 372). Dr. Patterson indicated at this time that plaintiff was on the maximum dose of Domperidone and that she had "failed metoclopramide and erythromycin in the past, which are the only two other prokinetic drugs we have available" (id.). He noted that Zelnorm no longer was on the market (id.).

Dr. Diana E. Velikova ("Dr. Velikova") began treating plaintiff on September 10, 2008 (see Tr. 410-12). On that occasion, she indicated plaintiff's report of episodic constipation, memory decline and depression (Tr. 411). Dr. Velikova also noted that plaintiff was suffering from chronic nausea due to her gastroparesis (id.). Dr. Velikova indicated that plaintiff was suffering from "almost constant nausea" and that attempts at treatment with multiple different medications had not been effective at controlling her nausea (id.). Dr. Velikova conducted a physical examination and indicated her impression

that plaintiff suffered from controlled hypertension, dyslipidemia, memory decline and previous history of impaired fasting glucose, among other things (Tr. 411-12). She indicated her plan to have plaintiff receive a comprehensive metabolic panel and a lipid panel, among other specific laboratory tests (Tr. 412).

Dr. Velikova provided a medical source statement regarding plaintiff's ability to work (see Tr. 440-44). Dr. Velikova opined that plaintiff "would not be able to lift/carry any w[eigh]t at all" when her gastroparesis symptoms are active (Tr. 441). Dr. Velikova also indicated her opinion that plaintiff may not be able to walk or stand "at all" if she "has active nausea/abdominal heaviness/pain" (id.). Dr. Velikova added a hand-written note into the medical source statement explaining her opinion that plaintiff never could climb, balance, kneel, crouch, crawl or stoop, in which she indicated that when plaintiff suffered from active severe nausea, she would "not be able to perform any of the above-listed activities and supine position may be the only way she can control symptoms" (Tr. 442).

Dr. Velikova also opined that plaintiff suffered from manipulative limitations, and explained this opinion by indicating that when plaintiff's "symptoms of gastroparesis are severe, supine position is the only position [plaintiff] can tolerate and during these episodes she is unable to perform any activity" (Tr. 443). Dr. Velikova also indicated that plaintiff suffered from environmental limitations (Tr. 444). Dr. Velikova indicated that this assessment was "made on the basis of patient's history and symptoms" (id.).

Dr. Patterson examined plaintiff again on December 22, 2009 (Tr. 448-49). He indicated his agreement with plaintiff that her disorder was "sufficiently disabling that

she should qualify for disability" but indicated that he would ask her primary care provider, Dr. Velikova, to complete "the physical assessment that is required on these forms" (Tr. 448; see also Tr. 449 (carbon copy sent to Dr. Velikova)). He again indicated that although plaintiff has tried many treatments without success and has asked Dr. Patterson if there were any new products on the market, Dr. Patterson stated "there really are not" (Tr. 448).

Dr. Patterson indicated in his assessment and plan that he supported her application for disability, but that he deferred to plaintiff's primary care provider to complete the medical source statement regarding plaintiff's physical abilities and limitations (see Tr. 448-49).

PROCEDURAL HISTORY

Plaintiff filed an application for Title II disability insurance benefits in August, 2007 (Tr. 154-58). Her application was denied initially and following reconsideration (Tr. 71-73, 78-82). Plaintiff's requested hearing was held on January 21, 2010, before Administrative Law Judge Richard A. Gilbert ("the ALJ") (Tr. 30-68, 83-84).

On February 5, 2010, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 9-25). On May 27, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). See 20 C.F.R. § 404.981. On June 30, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF No. 1).

On September 28, 2011, defendant filed the sealed administrative transcript regarding this matter ("Tr.") (see ECF No. 11). In her Opening Brief, plaintiff challenges the ALJ's review of: (1) the opinions of treating physicians; (2) plaintiff's testimony; (3) the lay testimony; and (4) the medical expert's testimony (ECF No. 16, p. 1). Plaintiff also challenges the ALJ's determination regarding plaintiff's residual functional capacity and his Step-Five finding regarding plaintiff's ability to perform other work (id.).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also  Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir.

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Molina v. Astrue, 2012 U.S. App LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not

the district court, is required to provide specific reasons for rejecting lay testimony."

Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Molina, supra, 2012 U.S. App LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also 28 U.S.C. § 2111; Shinsheki v. Sanders, 556 U.S. 396, 407 (2009); Stout, supra, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

(1) The ALJ failed to review properly the opinions of plaintiff's treating physicians.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* Social Security Ruling "SSR" 96-2p, 1996 SSR LEXIS 9; see also 20 C.F.R. § 416.902 (treating physician is one who provides treatment and has "ongoing treatment relationship" with claimant). However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d

1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if

a treating or examining physician's opinion is contradicted, that opinion "can only be

rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." Lester, supra, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035,

1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)

(citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). However, the ALJ must

explain why his own interpretations, rather than those of the doctors, are correct.

Reddick, supra, 157 F.3d at 725 (citing Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.

1988)).

In general, more weight is given to a treating medical source's opinion than to the

opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (citing

Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). On the other hand, an ALJ need

not accept the opinion of a treating physician, if that opinion is brief, conclusory and

inadequately supported by clinical findings or by the record as a whole. Batson v.

Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004)

(citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)); see also Thomas v.

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). An examining physician's opinion is

"entitled to greater weight than the opinion of a nonexamining physician." Lester, supra,

81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining

physician's or psychologist's opinion may not constitute substantial evidence by itself

sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831); see also 20 C.F.R. § 404.1527(d)(2)(i).

Plaintiff argues that the ALJ erred by finding that the opinions of both of plaintiff's treating physicians, that plaintiff's testimony and that the lay opinion all were inconsistent with the overall record and inconsistent with the ALJ's finding that plaintiff retained the functional capacity for work, when the only medical evidence consistent with the ALJ's findings was provided by consultants who never examined plaintiff and had no independent evidence to offer (see Opening Brief, pp. 14-22). Regarding the medical evidence and opinions, plaintiff offers specific arguments as to why it was not proper for the ALJ to credit the opinion of a non-examining medical consultant over the opinions of both of plaintiff's treating physicians (see id., pp. 14-19). For example, it appears from a review of the record that the medical expert relied on no examination but on his interpretation of the medical record and that his interpretation of the medical record contains at least one known error (see Tr. 50 (Dr. Weigeeford indicates that there are no documented incidents in which plaintiff has "talked about nausea" since 2008) Tr. 411

(September 10, 2008 treatment note indicating that plaintiff "still has almost constant nausea")). However, this may be due to Dr. Weigeeford's lack of possession of the records from plaintiff's treating physicians (<u>see</u> Tr. 50 ("I do not have her records going up to December of 2009, Your Honor")).

The Court notes that although in his written decision the ALJ refers to one of the medical experts as Albert Oguejiofor (<u>see</u> Tr. 12, 21), it appears from the record that actually it was Dr. Albert Weigeeford, M.D. ("Dr. Weigeeford") who provided the testimony to which the ALJ gives "great weight" (<u>see</u> Tr. 12, 21, 30, 32, 33, 47; <u>see also</u> Tr. 21 (the ALJ discusses Dr. Oguejiofor's testimony regarding "criteria delineated in Section 4.05 and 5.08"; Tr. 49-50 (Dr. Weigeeford discusses Listings Sections 5.08 and 4.05)). Dr. Weigeeford appears to be the only board certified internist who testified at plaintiff's hearing (Tr. 31, 47, 56, 60; <u>see also</u> Tr. 21). The Court also notes that although the ALJ relies in part on Dr. Weigeeford's opinion due to the fact that he is "board certified in internal medicine," this fact does not support the ALJ's decision to give Dr. Weigeeford's opinions weight over those of Dr. Velikova, who also appears to be board certified in internal medicine (<u>see</u> Tr. 444).

Defendant fails to respond to plaintiff's specific arguments regarding the medical evidence, but reiterates the findings of the ALJ with an implied presumption that they both are supported by substantial evidence in the record and that it was proper for the ALJ to rely on such reasons (<u>see</u> Response, ECF No. 19, pp. 5-9). Based on a review of the record as a whole, the Court is persuaded by most of plaintiff's arguments, as will be discussed further below.

a.  Dr. Diana Velikova, M.D. ("Dr. Velikova"), treating physician

The Court already has discussed the examination by Dr. Velikova in September, 2008, see supra, BACKGROUND section, as well as the medical source statement submitted in which Dr. Velikova indicated, among other things, her opinions that plaintiff "would not be able to lift/carry any w[eigh]t at all" when her gastroparesis symptoms are active and that plaintiff may not be able to walk or stand "at all" if she "has active nausea/abdominal heaviness/pain" (Tr. 441). For example, Dr. Velikova explained her opinion that plaintiff suffered from manipulative limitations by indicating that when plaintiff's "symptoms of gastroparesis are severe supine position is the only position [plaintiff] can tolerate and during these episodes she is unable to perform any activity" (Tr. 443).

The ALJ included the following in his written decision regarding the opinions of treating physician, Dr. Velikova:

> In December of 2009, treating physician Diana Belikova, MD (sic) completed a medical source statement regarding the claimant's ability to do work related activities (Exhibit 14F). In that assessment, Dr. Belikova (sic) determined that the claimant could lift and carry 0 to 5 pounds on basis she characterized as 'between never and occasionally' depending on the claimant's symptoms. The claimant's impairments were found to affect the claimant's ability to stand, walk sit and push and pull. With regard to postural limitation, Dr. Belikova (sic) determined that as a result of her nausea the claimant could never engage in maneuvers such as climbing; balancing; kneeling; crouching; crawling and stooping (internal citation to Exhibit 14F/3). Similarly, if the claimant is having active nausea, Dr. Belikova (sic) stated that the claimant will not be able to perform manipulative activities such as reaching all directions; handling; fingering; and feeling (internal citation to Exhibit 14F/4). Additionally, if the claimant's nausea is severe, Dr. Belikova (sic) determined that the claimant's communicative ability to speak would be limited (internal citation to Exhibit 14F/4). The claimant's nausea may

be triggered by environmental extremes such as temperature extremes; noise; dust; vibration; humidity/wetness; hazards; and fumes, odors, chemical and gases (internal citation to Exhibit 14F/5).

Pursuant to SSR 96-2, the undersigned has considered these opinions as they have been proffered by the claimant's treating physicians. However . . . . the opinion rendered by Dr. Belikova (sic) is [] afforded little weight. The claimant's course of treatment with Dr. Belikova (sic) is more focused on the onset of heart palpitations rather than the treatment of gastroparesis (internal citation to Exhibit 11F). As such the undersigned finds that the opinion is not supported by the objective evidence which is more consistent with a residual functional capacity of a light level of physical exertion with the aforementioned limitations.

(Tr. 20-21).

The ALJ here appears to have committed an error in his evaluation of treating physician Dr. Velikova's opinions similar to the one committed by the ALJ in Embrey. See Embrey v. Bowen, 849 F.2d 418, 421-22 (9th 1988); see also Reddick, supra, 157 F.3d at 725.

In Embrey, the Ninth Circuit found that an ALJ had failed to provide specific and legitimate reasons supported by substantial evidence in the record for the failure to credit fully the opinion of a treating physician. The court noted that the ALJ's written decision had included the following discussion:

The opinions of total disability tended [sic] in the record are unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings. The duration of the claimant's stress treadmill testings and relative lack of positive findings, the results of other laboratory and x-ray testing, the objective observations of the physicians of record, all preponderate toward a finding that the claimant has never lost the residual functional capacity for light work for any period approaching 12 months.

*Embrey*, *supra*, 849 F.2d at 421. The Ninth Circuit Court found that these statements by the ALJ in *Embrey* were not sufficient to discount the doctors' opinions, even though the ALJ had discussed the medical evidence. *Id.* (citations omitted); *see also* *Reddick*, *supra*, 157 F.3d at 725. The court explained:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Moreover[,] the ALJ's analysis does not give proper weight to the subjective elements of the doctors' diagnoses. The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.

*Embrey*, *supra*, 849 F.2d at 421-22 (internal footnote omitted).

The ALJ here appears to have committed a similar error. *See id.* at 421; *see also* *Reddick*, *supra*, 157 F.3d at 725. The ALJ here found that Dr. Velikova's opinion "is not supported by the objective evidence" and that the objective findings are "more consistent with a residual functional capacity of a light level of physical exertion with the aforementioned limitations" (Tr. 20-21)." However, to "say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity [Ninth Circuit] cases have required, even when the objective factors are listed seriatim." *See Embrey*, *supra*, 849 F.2d at 421-22; *see also* *Reddick*, *supra*, 157 F.3d at 725.

Here, the ALJ needed to do more "than offer his conclusions." *See Embrey*, 849 F.2d at 422. As the Ninth Circuit has indicated more than once, an ALJ must explain why

his own interpretations, rather than those of the doctors, are correct. See Reddick, supra, 157 F.3d at 725 (citing Embrey, supra, 849 F.2d at 421-22).

The only other reason given by the ALJ here as to why he did not credit fully the opinion of treating physician Dr. Velikova was that plaintiff's course of treatment with Dr. Velikova "is more focused on the onset of heart palpitations rather than the treatment of gastroparesis (internal citation to Exhibit 11F [i.e., Tr. 409-25])" (Tr. 20-21). Although the treatment records from the offices of Dr. Velikova indicate that plaintiff was being "followed by Dr. Peterson, gastroenterology at Virginia Mason" for "idiopathic gastroparesis," the fact that Dr. Velikova, an internal medicine specialist, referred plaintiff to a gastroenterologist for treatment of her gastroparesis, does not entail a sufficiently legitimate reason to discount all of Dr. Velikova's opinions in favor of the opinions of another internal medicine specialist who not only did not treat plaintiff for gastroparesis, but also did not treat plaintiff for anything or ever examine plaintiff (see Tr. 410, 413; see also Tr. 21, 47). As indicated, in general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant, see Lester, supra, 81 F.3d at 830, as impliedly recognized by the ALJ (see Tr. 21 (citing SSR 96-2p: if "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight, i.e., it must be adopted")). In addition, it appears from a review of the record that Dr. Velikova reviewed plaintiff's record even on occasions on which she did not provide her opinions specifically in the treatment records (see Tr. 414).

1   For the reasons discussed and based on a review of the relevant record, the Court

2   finds that the ALJ did not evaluate properly the opinions of treating physician, Dr.

3   Velikova. See Lester, supra, 81 F.3d at 830; see also Reddick, supra, 157 F.3d at 725

4   (citing Embrey, supra, 849 F.2d at 421-22). For this reason, this matter should be

5   reversed and remanded to the Commissioner for further administrative proceedings.

6       b.  Dr. Patterson, treating physician

7       The Court already has discussed Dr. Patterson's treatment of plaintiff as a

8   gastroenterologist specialist and many of his opinions (see supra, BACKGROUND

9   section). The ALJ considered the opinions of Dr. Patterson as those by a treating

10  physician, pursuant to SSR 96-2, however the ALJ gave Dr. Patterson's opinions only

11  "little weight" (Tr. 21).

12      The ALJ provides one reason relevant to one of Dr. Patterson's statements, i.e.,

13  that plaintiff was no longer able to work and had to stop attempted jobs "after a short

14  period of time because of the severity of her GI symptoms" (see Tr. 21 (citing "Exhibit

15  5F"; see also Tr. 20, 372)). However, this reason does not provide much support for the

16  ALJ's rejection of the rest of Dr. Patterson's relevant opinions.

17      The ALJ also appears to have relied on a "significant gap in the claimant's history

18  of treatment" (Tr. 21). However, the ALJ failed to reconcile the reason offered by

19  plaintiff to explain such gap, that Dr. Patterson had told her that "there's really nothing he

20  can do" (see Tr. 38-39). A review of the record supports this testimony from plaintiff (see

21  Tr. 372, 374, 448).

In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7 1996 SSR LEXIS 4 at *22. Here, the ALJ appears to have relied on a gap in treatment without considering the reason provided by plaintiff in her testimony that Dr. Patterson indicated to her that there was nothing that the doctors could do to help her, which also is repeated multiple times in the record (see Tr. 38-39, 372, 374, 448). Although this SSR covers the review of an individual's credibility, the ALJ's reliance on this gap in treatment without consideration of the fact, demonstrated by substantial evidence in the record, that there was nothing else that the doctors could do to help plaintiff, does not provide sufficient support for the ALJ's determination to fail to credit fully the opinions of Dr. Patterson. See SSR 96-7 1996 SSR LEXIS 4 at *22.

The final reason provided by the ALJ for his failure to credit fully the opinions of Dr. Patterson was that Dr. Patterson's "statements are inconsistent with the record as a whole" (Tr. 21). However, Dr. Patterson's opinions are consistent with Dr. Velikova's opinions; the lay opinions; and plaintiff's testimony, all of which the ALJ failed to credit fully, see supra, section 1.a; infra sections 2 and 3. In addition, the ALJ failed to provide support for this conclusory finding (see Tr. 21). For these reasons and based on the relevant record, the Court finds that the finding by the ALJ that Dr. Patterson's

"statements are inconsistent with the record as a whole" is not supported by substantial evidence in the record.

For the reasons discussed and based on a review of the relevant record, the Court finds that the ALJ did not evaluate properly the opinions of treating physician, Dr. Patterson. See Lester, supra, 81 F.3d at 830; see also Reddick, supra, 157 F.3d at 725 (*citing* Embrey, supra, 849 F.2d at 421-22).

(2) The ALJ did not evaluate properly plaintiff's testimony and credibility.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." Fair, supra, 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." Sample, supra,694 F.2d at 642 (*citing* Beane v. Richardson, 457 F.2d 758 (9th Cir. 1972); Wade v. Harris, 509 F. Supp. 19, 20 (N.D. Cal. 1980)).

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." Reddick, supra, 157 F.3d at 722 (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, supra, 157

F.3d at 722 (citations omitted); <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1284 (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1284.

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1281 (<i>citing</i> <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (<i>en banc</i>) (<i>citing</i> <u>Cotton</u>, 799 F.2d at 1407). Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1283-84; <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722 (<i>citing</i> <u>Lester</u>, <u>supra</u>, 81 F.3d at 834; <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

The Court first notes that a determination of plaintiff's credibility relies on the assessment of the medical evidence, <u>see</u> 20 C.F.R. § 404.1529(c), and the Court already

has determined that the ALJ failed to evaluate properly the medical evidence, see supra, section 1. In addition, the Court finds that the ALJ committed legal errors in his review of plaintiff's testimony and credibility, as discussed further below.

As discussed already, the ALJ noted plaintiff's treatment gap when failing to credit fully Dr. Patterson's opinions, see supra, section 1.b. The ALJ also appears to have relied on this treatment gap to fail to credit fully plaintiff's credibility. However, according to Social Security Ruling, SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7 1996 SSR LEXIS 4 at *22. Although the ALJ mentions plaintiff's testimony that Dr. Patterson had told her that there wasn't anything else that he could do, the ALJ appears to have relied on a gap in treatment without discussing why he found her reason to be inadequate even though it is documented multiple times in the record by Dr. Patterson, as well as by Dr. Schuffler (see Tr. 38-39, 372, 374, 448; see also Tr. 261).

The ALJ also relied on plaintiff's treatment gap, along with the fact that her treatment for gastroparesis consisted of taking Domperidone and watching her diet, in order to find that "the evidence as a whole" does not indicate that plaintiff's gastroparesis, considered separately or in combination with her hypertension and hyperlipidemia, "warrant a finding of total disability as alleged by the claimant" (see Tr. 19). The fact that plaintiff's treating gastroenterologist has indicated that there is no other

available treatment to offer plaintiff for her conditions other than diet and medication that doesn't control her symptoms does not provide sufficient support for the ALJ's failure to credit fully plaintiff's testimony and credibility.

In addition, the ALJ relies on plaintiff's lack of mental health treatment from a mental health professional (see Tr. 19). However, general doctors and primary care physicians often treat mental illnesses. According to the Ninth Circuit, "it is well established that primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing C., Tracy Orleans, Ph.D., Linda K. George, Ph.D., Jeffrey L. Houpt, M.D., and H. Keith H. Brodie, M.D., *How Primary Care Physicians Treat Psychiatric Disorders: A National Survey of Family Practitioners*, 142:1 Am. J. Psychiatry 52 (Jan. 1985)). As indicated by the Ninth Circuit, if "the Magistrate's conclusion that there was no psychiatric evidence is based on an assumption that such evidence must be offered by a Board-certified psychiatrist, it is clearly erroneous." Sprague, supra, 812 F.2d at 1232. As indicated by the ALJ, plaintiff was receiving treatment for her mental impairments (see Tr. 19).

The Court also notes that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" See Van Nguyen, supra, 100 F.3d at 1465 (quoting with approval, Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)). When a person suffers from a mental illness, especially a severe one such as the major depressive disorder suffered by plaintiff here, (see Tr. 14), and the mentally ill person does not have the requisite insight into her condition to seek

out mental health treatment from a provider other than her primary care physician, this fact actually may indicate a greater severity of mental incapacity. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124. Indeed, the Medical Expert testified that it is possible that someone suffering from depression will not disclose the extent or severity of her depression (see Tr. 58).

Finally, the ALJ relies on plaintiff's activities of daily living when failing to credit fully plaintiff's testimony (see Tr. 20). However, regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (*quoting* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)).

The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." Orn, supra, 495 F.3d at 639 (*citing* Fair, supra, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. Orn, supra, 495 F.3d at 639 (*quoting* Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

The ALJ includes the following discussion in his written decision:

> As mentioned above, the claimant has also reported the ability to
> perform activities of daily (sic). She is able to maintain her personal
> grooming and prepare simple meals. Additionally, she is able to perform

household chores and yard work when she is feeling well. The claimant's ability to perform these activities is inconsistent with the allegation that she is precluded from all work related activities. Furthermore, the claimant reported that she has the ability to lift 10 pounds; walk about 20 feet before needing to rest for a few minutes. Additionally the claimant reported being able to stand for 5 minutes; lie down rather than sit while at other times she is able to sit for a long period of time (internal citation to Exhibit 4E/6). The foregoing is consistent with the residual functional capacity assessed herein.

(Tr. 20).

The Court first notes that what plaintiff can do when "she is feeling well" is of limited relevance, as Dr. Velikova indicated her medical opinion that when plaintiff is not doing well, she is limited to a great degree and may require laying in a supine position, (see Tr. 441-44; see also supra, BACKGROUND section). The Court also notes that plaintiff testified that she suffers from such limitations about five to ten days a month (see Tr. 36). Similarly, the allegation that plaintiff is more capable during some occasions than at other occasions, also is consistent with the medical source statement from Dr. Velikova.

In addition, the ALJ did not "make 'specific findings relating to the daily activities' and their transferability," to a work environment (see Tr. 20). See Orn, supra, 495 F.3d at 639 (quoting Burch, supra, 400 F.3d at 681). Therefore, in order to conclude that plaintiff's daily activities warranted an adverse credibility determination, the ALJ needed to demonstrate that her activities of daily living contradicted her other testimony. See Orn, supra, 495 F.3d at 639 (citing Fair, supra, 885 F.2d at 603).

Instead, the ALJ here found that plaintiff's daily activities were "inconsistent with the allegation that she is precluded from all work related activities" (see Tr. 20).

Indicating that a claimant's activities of daily living in general are not consistent with the fact that she is seeking disability does not equate to demonstrating that they contradict her other testimony. See Orn, supra, 495 F.3d at 639 (*citing* Fair, supra, 885 F.2d at 603) (*quoting* Vertigan, supra, 260 F.3d at 1050) ("the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability").

For the reasons stated and based on the relevant record, the Court concludes that the ALJ failed to provide clear and convincing reasons for his failure to credit fully plaintiff's testimony and credibility. See Smolen, supra, 80 F.3d at 1283-84; see also Orn, supra, 495 F.3d at 639; Van Nguyen, supra, 100 F.3d at 1465; Sprague, supra, 812 F.2d at 1232; SSR 96-7 1996 SSR LEXIS 4 at *22. The ALJ's failure to evaluate properly plaintiff's testimony and credibility provides an independent reason that this matter should be reversed and remanded to the Commissioner for further administrative proceedings.

(3) The ALJ failed to evaluate properly the lay opinions offered by plaintiff's husband, Mr. Robert Nylander and plaintiff's former supervisor, Officer Ingram.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and chiropractors, who are considered other medical sources, see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc.

Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); SSR

06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An ALJ may disregard opinion evidence

provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the

ALJ 'gives reasons germane to each witness for doing so." <u>Turner</u>, <u>supra</u>, 613 F.3d at

1224 (*citing* <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001)); <u>see also</u> <u>Van Nguyen</u>,

<u>supra</u>, 100 F.3d at 1467. This is because "[i]n determining whether a claimant is disabled,

an ALJ must consider lay witness testimony concerning a claimant's ability to work."

<u>Stout v. Commissioner, Social Security Administration</u>, 454 F.3d 1050, 1053 (9th Cir.

2006) (*citing* <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)).

The Ninth Circuit has characterized lay witness testimony as "competent

evidence," noting that an ALJ may not discredit "lay testimony as not supported by

medical evidence in the record." <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1116 (9th Cir. 2009)

(*quoting* <u>Van</u> <u>Nguyen</u>, <u>supra</u>, 100 F.3d at 1467) (*citing* <u>Smolen</u>, <u>supra</u>, 80 F.3d at 1289).

In addition, testimony from "other non-medical sources," such as friends and family

members, <u>see</u> 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of

their relationship to the claimant or because of any potential financial interest in the

claimant's disability benefits. <u>Valentine v. Comm'r SSA</u>, 574 F.3d 685, 694 (9th Cir.

2009).

In addition, "where the ALJ's error lies in a failure to properly discuss competent

lay testimony favorable to the claimant, a reviewing court cannot consider the error

harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting

the testimony, could have reached a different disability determination." <u>Stout</u>, <u>supra</u>, 454

F.3d at 1056 (reviewing cases). However, if the ALJ has provided proper reasons to discount the lay testimony in another aspect of the written decision, such as within the discussion of plaintiff's credibility, the lay testimony may be considered discounted properly even if the ALJ fails to link explicitly the proper reasons to discount the lay testimony to the lay testimony itself. See Molina, supra, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46 (*quoting* Lewis, supra, 236 F.3d at 512). The Court will not reverse a decision by an ALJ in which the errors are harmless and do not affect the ultimate decision regarding disability. See Molina, supra, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also 28 U.S.C. § 2111; Shinseki v. Sanders, 556 U.S. 396, 407 (2009).

a. Mr. Robert Nylander, plaintiff's husband ("Mr. Nylander")

Mr. Robert Nylander provided lay testimony under penalty of perjury regarding plaintiff's abilities and limitations (Tr. 445-46). He opined that plaintiff was incapable of the duties of her job as heavy equipment operator observer, and that he often "had to perform these duties for her" (Tr. 446). He indicated that plaintiff's "attendance at the worksite was sporadic and unpredictable due to the severe pain, nausea and discomfort she experienced due to her gastroparesis" (id.). Mr. Nylander also indicated that he had witnessed plaintiff's "severely debilitating conditions caused by her gastroparesis" (id.). He indicated his impression that she appeared to be "profoundly depressed" and that she frequently was unable to "perform any meaningful activities including housekeeping, cooking and cleaning due to her chronic and severe pain" (id.).

The ALJ indicates that he gave little weight to the lay opinion provided by plaintiff's husband in part because of the "nature and extent of the relationship between Mr. and Mrs. Nylander" (Tr. 21-22). Such reliance was improper as testimony from "other non-medical sources," such as friends and family members may not be disregarded simply because of their relationship to the claimant. See Valentine, supra, 574 F.3d at 694); see also 20 C.F.R. § 404.1513 (d)(4).

The ALJ also gave little weight to the lay opinion provided by plaintiff's husband because "it is inconsistent with an ultimate issue reserved for determination by the Commissioner pursuant to the Social Security Act" (Tr. 21-22). This finding by the ALJ appears to be that the ALJ already had made the conclusion that plaintiff was not disabled ("the ultimate issue reserved for determination by the Commissioner") and that Mr. Nylander's opinion is inconsistent with the ALJ's conclusion (see id.).

It is not proper for an ALJ to determine first that a claimant is disabled, and then fail to credit fully lay testimony that is inconsistent with the "ultimate issue" that the claimant is disabled. This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout, supra, 454 F.3d at 1053 (citing Dodrill, supra, 12 F.3d at 919). In order to consider lay testimony when making the determination regarding whether or not a claimant is disabled, the lay testimony has to be considered before the determination is made. See id.

The fact relied on by the ALJ that his determination regarding the "ultimate issue reserved for determination by the Commissioner," was inconsistent with the lay opinion offered by Mr. Nylander, helps to demonstrate that the ALJ's error in his review of the

lay opinion offered by Mr. Nylander was not harmless. Mr. Nylander indicated multiple

restrictions suffered by plaintiff regarding her ability to work (see Tr. 445-46).

The Court will not reverse a decision by an ALJ in which the errors are harmless

and do not affect the ultimate decision regarding disability. See Molina, supra, 2012 U.S.

App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also 28 U.S.C. § 2111; Shinseki v.

Sanders, 556 U.S. 396, 407 (2009). However, here, the ALJ has indicated specifically

that the opinions by Mr. Nylander, which the Court has determined were not evaluated

properly by the ALJ, are inconsistent with the ALJ's determination regarding the

"ultimate issue reserved for determination by the Commissioner" (Tr. 22).

The Court finds that the ALJ's error in his review of Mr. Nylander's opinions

affects the ultimate decision regarding disability and therefore is not harmless. See

Molina, supra, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also

Stout, supra, 454 F.3d at 1056.

b.  Plaintiff's former supervisor, Officer Robert Ingram

Plaintiff's former supervisor, Officer Robert Ingram, Law Enforcement Training

Coordinator ("Officer Ingram"), provided a lay statement on November 25, 2008 (see Tr.

408). He indicated that he hired and supervised plaintiff during the summer of 2000 and

2001 (id.). He opined that plaintiff "was an exceptional employee with an unblemished

record of attendance and punctuality" (id.). He further opined that the "quantity and

quality of her work was also excellent" (id.).

Officer Ingram indicated his opinion that during the early summer of 2001,

plaintiff "began experiencing stomach problems that impaired her ability to perform the

essential functions of her job duties" (id.). He also indicated his opinion that although plaintiff's "attitude was always positive and her work ethic unquestionable, it was apparent to me that [plaintiff] suffered from a genuine issue that physically interfered with her ability to function in a normal capacity" (id.).

Defendant admits that the ALJ erred in failing to review the lay opinion by Officer Ingram (see Response, ECF No. 19, pp. 9-10). However, Defendant argues that the error should be considered harmless "because the medical evidence did not document the severity of complaints alleged" (id. at 10). Not only did the ALJ not rely on this reason, see Bray, supra, 554 F.3d at 1226-27 (citing Chenery Corp., supra, 332 U.S. at 196) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking"); but also, if the ALJ had so relied, any such reliance would be contrary to Ninth Circuit case law.

Defendant should take note that an ALJ may not discredit "lay testimony as not supported by medical evidence in the record." Bruce, supra, 557 F.3d at 1116 (quoting Van Nguyen, supra, 100 F.3d at 1467) (citing Smolen, supra, 80 F.3d at 1289). Likewise, an ALJ may not discredit properly lay opinions by finding that the severity of "the complaints alleged" is not documented by the medical evidence in the record. See Bruce, supra, 557 F.3d at 1116; see also Van Nguyen, supra, 100 F.3d at 1467; Smolen, supra, 80 F.3d at 1289.

1    Defendant also relies on the note by the ALJ regarding "gaps in treatment"

2    (Response, ECF No. 19, p. 10 (*citing* Tr. 21)). However, by doing so, defendant commits

3    the same error as the ALJ, *i.e.*, relying on gaps in treatment without consideration of

4    plaintiff's testimony that the gap resulted from plaintiff's treating physician indicating

5    that "there's really nothing he can do" (see Tr. 38-39). As already discussed, a review of

6    the record supports this testimony from plaintiff (see Tr. 372, 374, 448). In addition,

7    although defendant contends that lack of treatment is a "legitimate credibility

8    consideration," the case cited by defendant concerns relying on a lack of treatment to find

9    a claimant less than fully credible (see Response, ECF No. 19, p. 10 (*citing* <u>Burch</u>, supra,

10   400 F.3d at 681)). Defendant has not explained how the fact that a claimant may have

11   suffered from a gap in treatment makes it more likely than not that the individual

12   providing a lay opinion has been less than fully truthful.

13

14          Defendant argues that the Court can "confidently conclude that no reasonable

15   ALJ, even when fully crediting the lay witness statement, could have reached a different

16   disability determination" (Response, ECF No. 19, p. 10). However, as Officer Ingram

17   opined that plaintiff "began experiencing stomach problems that impaired her ability to

18   perform the essential functions of her job duties" and was suffering "from a genuine issue

19   that physically interfered with her ability to function in a normal capacity" (Tr. 408), the

20   Court does not agree with defendant's argument.

21          Based on these reasons and the relevant record, the Court concludes that the ALJ's

22

23   error in the review of the lay evidence provides an independent reason supporting the

24

reversal and remand of this matter to the Commissioner for further administrative

proceedings.

(4) <u>The Medical Expert's testimony, the ALJ's determination regarding plaintiff's</u>

<u>residual functional capacity and the Step-Five finding regarding plaintiff's ability</u>

<u>to perform other work all should be evaluated anew following remand of this</u>

<u>matter</u>.

Because of the ALJ's errors during the evaluation of the medical evidence,

plaintiff's testimony, and the lay evidence, the Court concludes that all of the five steps

of the sequential disability evaluation process should be completed anew. Plaintiff should

be allowed to present new evidence and arguments as relevant to the appropriate period

of time following remand.

(5) <u>This matter should be remanded for further administrative proceedings</u>.

The Ninth Circuit has put forth a "test for determining when evidence should

be credited and an immediate award of benefits directed." <u>Harman v. Apfel</u>, 211

F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is

appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for
> rejecting such evidence, (2) there are no outstanding issues that
> must be resolved before a determination of disability can be
> made, and (3) it is clear from the record that the ALJ would be
> required to find the claimant disabled were such evidence
> credited.

Harman, 211 F.3d at 1178 (*quoting* Smolen, supra, 80 F.3d at 1292). Here, although the ALJ failed to provide legally sufficient reasons for rejecting much of the evidence, outstanding issues must be resolved. See Smolen, 80 F.3d at 1292.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick, supra, 157 F.3d at 722; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's credibility and residual functional capacity. See Sample, supra, 694 F.2d at 642.

CONCLUSION

After considering and reviewing the record, the undersigned finds that the ALJ failed to evaluate properly the opinions of two treating physicians, while improperly providing more weight to the opinion of a non-examining doctor. The ALJ also erred in his review of plaintiff's credibility and committed harmful error during his review of the lay evidence.

1       Based on these reasons and the relevant record, the Court **ORDERS** that this

2 matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

3 405(g) to the Commissioner for further consideration.

4       **JUDGMENT** should be for plaintiff and the case should be closed.

5 Dated this 12th day of April, 2012.

6

7

8 J. Richard Creatura
  United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24